PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

ESAB GROUP, INCORPORATED,
Plaintiff-Appellee,

v.

CENTRICUT, INCORPORATED; THOMAS
ALEY,
Defendants-Appellants,

No. 96-2504

and

JOHN BERGEN; THOMAS FITZPATRICK;
GORDON THOMAS ALEY; LINDA ALEY,
d/b/a/ Corbin Consulting; MARK
LINDBERG,
Defendants.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, Chief District Judge.
(CA-96-168-4-2)

Argued: July 9, 1997

Decided: October 17, 1997

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Niemeyer wrote the opinion, in which Judge Michael and
Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** John Phillips Linton, SINKLER & BOYD, P.A., Charleston, South Carolina, for Appellants. C. Craig Young, WILLCOX, MCLEOD, BUYCK & WILLIAMS, Florence, South Carolina, for Appellee. **ON BRIEF:** Manton M. Grier, SINKLER & BOYD, P.A., Columbia, South Carolina, for Appellants. Wm. Reynolds Williams, WILLCOX, MCLEOD, BUYCK & WILLIAMS, Florence, South Carolina, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

In this case we must determine whether the district court in South Carolina obtained personal jurisdiction over New Hampshire defendants pursuant to a complaint alleging a civil RICO claim and related state law claims. The district court, relying on South Carolina's long-arm statute, found that the defendants' intentional tortious conduct directed at the South Carolina plaintiff supplied sufficient minimum contacts to satisfy the requirements of the South Carolina statute and the Fourteenth Amendment.

For reasons that follow, we disagree with the district court's rationale. But we nonetheless affirm the district court's finding of personal jurisdiction over the defendants because of the nationwide service of process authorized by the RICO statute and the doctrine of pendent personal jurisdiction.

I

The ESAB Group, Inc. is a Delaware corporation located in Florence, South Carolina, which engages in the business of developing and manufacturing welding and cutting systems. In its amended complaint against Centricut, Inc., Thomas Aley, and others, the ESAB Group alleged that Centricut and Aley participated in a conspiracy to appropriate the ESAB Group's trade secrets and customer lists. The complaint alleged that they accomplished this with the assistance of

2

John Bergen, a Florida resident who served as an ESAB Group sales representative in Florida from 1980 to 1984 and as the ESAB Group's regional sales manager in Florida from 1987 to 1995. The ESAB Group charged in its amended complaint that the misappropriation was effected "pursuant to an intentional plan . .. to appropriate Plaintiff's business" and by means of a "scheme or artifice to defraud." The complaint contains six counts based on state law, alleging conspiracy, intentional interference with economic relations, breach of contract accompanied by a fraudulent act, South Carolina Unfair Trade Practices Act violations, misappropriation of trade secrets, intentional interference with prospective contractual relations, and entitlement to equitable relief. It also contains a count for civil RICO based on 18 U.S.C. § 1962.

Centricut is a New Hampshire limited liability company that manufactures and sells replacement parts for cutting machines, and arguably competes to some degree with the ESAB Group. Centricut conducts its business entirely through mail order. It has no offices or sales representatives in South Carolina; it has no property in South Carolina; it has no phone listings there; and it has never paid South Carolina taxes. Moreover, it claims that no employee has ever traveled to South Carolina "for any purpose." As of 1995, Centricut did have 26 customers who resided in South Carolina, constituting 1% of all of its customers and representing .079% of its gross annual sales. It also purchased on one occasion between $10,000 and $20,000 worth of parts from a South Carolina supplier. Centricut stated that it had never targeted formal advertising at South Carolina, having only once published formal advertising in a trade journal of national circulation.

Aley, Centricut's CEO at the time, stated in an affidavit that he was a New Hampshire resident until November 1995 and a Florida resident thereafter. He stated that for the past 25 to 30 years he has never been in South Carolina and that he has conducted no business and owns no property there.

Centricut and Aley filed several motions, one of which sought to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2), alleging that their contacts with South Carolina were insufficient to subject them to personal jurisdiction there. The ESAB Group

3

responded that the defendants "purposefully directed their activities toward the State of South Carolina and its corporate citizens, and this litigation arises from those activities." The ESAB Group claimed alternatively that the court had personal jurisdiction over the defendants by reason of the nationwide service of process in RICO actions permitted by 18 U.S.C. § 1965(b).

The district court denied the motion to dismiss, holding that it had personal jurisdiction over Centricut and Aley, based on "the effects test" drawn from Calder v. Jones, 465 U.S. 784 (1984). The district court said that because Centricut's actions "were designed to damage the [South Carolina] plaintiff . . . and did damage the plaintiff," it was fair to hale Centricut into a South Carolina court. The district court granted leave to the defendants to file an interlocutory appeal under 28 U.S.C. § 1292(b), and we did likewise.

II

Federal district courts may exercise in personam jurisdiction only to the degree authorized by Congress acting under its constitutional power to "ordain and establish" the lower federal courts. U.S. Const. art. III, § 1; see also id. art. I, § 8, cl. 9. The exercise of personal jurisdiction is also constrained by the Due Process Clause of the Fifth Amendment. See Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 103-04 (1987). As prerequisites to exercising personal jurisdiction over a defendant, a federal court must have jurisdiction over the subject matter of the suit, venue, "a constitutionally sufficient relationship between the defendant and the forum," and "authorization for service of a summons on the person." Id. at 104. Thus, a federal court's exercise of jurisdiction over a person is closely linked to effective service of process.

Federal Rule of Civil Procedure 4(k)(1) provides that "[s]ervice of a summons or filing a waiver of service is effective to establish [a federal court's] jurisdiction over the person of a defendant" if such service is accomplished on a defendant whom the law has made amenable to the court's process. See also Omni Capital, 484 U.S. at 104. Rule 4(k) enumerates five sources authorizing service to effect in personam jurisdiction: (1) state law; (2) Federal Rules of Civil Procedure 14 and 19 (relating to third party practice and joinder), provided

4

service is effected "not more than 100 miles from the place from which the summons issues"; (3) the federal interpleader statute, 28 U.S.C. § 1335; (4) federal statute; and (5) Federal Rule of Civil Procedure 4(k)(2) itself, to enforce claims "arising under federal law" on defendants who are not subject to the jurisdiction of any state.

In the district court, the ESAB Group argued that it had served the defendants in the manner specified by South Carolina's long-arm statute, S.C. Code Ann. §§ 36-2-803(1)(c) & (d), and by RICO, 18 U.S.C. § 1965. Because the district court held that the ESAB Group had effectively served the defendants under South Carolina's long-arm statute, the court did not address whether service was effective under the RICO statute.

When authorized by Federal Rule of Civil Procedure 4(k)(1)(A), service of process sufficient to exercise jurisdiction over a defendant is limited by state law, so that any challenge to the personal jurisdiction requires us to assess the jurisdiction of the courts in the state where the district court is located. Centricut and Aley contend that service on them under South Carolina's long-arm statute crossed the boundaries of that statute as constrained by the Fourteenth Amendment and that the district court erred in finding such service effective.

Since in personam jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment, we first inquire whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant. See Wolf v. Richmond County Hosp. Auth., 745 F.2d 904, 909 (4th Cir. 1984). If it does, we must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. See id. Because Rule 4(k)(1)(A) delimits the scope of effective federal service in terms of the limits on state court jurisdiction, our inquiry into the federal court's jurisdiction pursuant to Rule 4(k)(1)(A) incorporates the Fourteenth Amendment due process standard, even though that Amendment applies of its own force only to states. See U.S. Const. amend. XIV, § 1 ("No State shall . .. ."); see generally 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.1 (Supp. 1997) (implicit in Rule 4(k)(2) "is the concept that a federal district court must employ a state long-arm statute and use a Fourteenth Amendment due process analysis to assess

5

the exercise of personal jurisdiction over a non-resident of the forum state").

South Carolina's long-arm statute provides in relevant part:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's . . . (c) commission of a tortious act in whole or in part in the State; [or] (d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State.

S.C. Code Ann. §§ 36-2-803(1)(c) & (d). South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause. See Southern Plastics Co. v. Southern Commerce Bank, 423 S.E.2d 128, 130 (S.C. 1992); Hammond v. Cummins Engine Co., 336 S.E.2d 867, 868 (S.C. 1985); Triplett v. R. M. Wade & Co., 200 S.E.2d 375, 379 (S.C. 1973); see also Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 657 n.2 (4th Cir. 1989). Consequently, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996). We thus turn to the constitutional question of whether Centricut and Aley have established "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Myer, 311 U.S. 457, 463 (1940)).

As we explained more fully in Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 941-46 (4th Cir. 1994), and reiterated in Stover, 84 F.3d at 136, the jurisprudence of minimum contacts has developed as a surrogate for presence in the state because "[a] state's sovereignty remains territorial, and its judicial power extends over only those persons, property, and activities within its borders." Id. A state's laws "have no operation in other states except as allowed by those states or by comity." Id. The question, then, is whether a defendant's con-

6

tacts with the forum state are so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Such activities need not involve physical presence in the state, but must still be "purposefully directed toward the forum state." Lesnick, 35 F.3d at 945; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).

It is now generally accepted that when the plaintiff's cause of action does not arise from the defendant's contacts with the forum state so as to provide "specific jurisdiction" for the claim based on the "`relationship among the defendant, the forum, and the litigation,'" Helicopteros Nacionales de Columba v. Hall, 466 U.S. 408, 414 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)), "general jurisdiction" may nevertheless be asserted over a defendant whose activities in the forum state have been "continuous and systematic." Id. at 414-15 (citations omitted). But the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction. See generally 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067, at 295-98 (1987)("threshold contacts required for general jurisdiction are very substantial, indeed"). In the case before us, the ESAB Group argues that standards for both general and specific jurisdiction have been met. We will address each in order.

A

The ESAB Group contends that Centricut and Aley have sufficiently "continuous and systematic" contacts with South Carolina to justify its exercise of general in personam jurisdiction, presumably under S.C. Code Ann. § 36-2-803(1)(d). We disagree.

Although 26 of Centricut's customers reside in South Carolina, all are mail order customers and Centricut does not service them in South Carolina. It maintains no sales representatives or other agents there, and the business attributable to Centricut's South Carolina customers

7

constitutes less than one-tenth of one percent of its nationwide sales volume. These contacts, we believe, fall far short of the more extensive contacts that we have found sufficient in our general jurisdiction cases.

In Ratliff v. Cooper Labs., Inc., 444 F.2d 745, 748 (4th Cir. 1971), we held that where a defendant does no more than advertise and employ salesmen in a forum state, such contacts are not sufficient to justify general jurisdiction. We followed Ratliff with our decision in Lee v. Walworth Valve Co., 482 F.2d 297 (4th Cir. 1973), in which we upheld general jurisdiction over a company whose annual sales in the forum were approximately $200,000 and where sales representatives spent approximately 80 days per year in the forum state. But the exercise of jurisdiction there was unusual because it was supported in part by the fact that the cause of action arose on the high seas and thus did not arise within the sovereign boundaries of any of the United States. Our decisions since Lee make clear that even the contacts in Lee were marginal.

In Wolf, for example, we found no general jurisdiction based on a Georgia hospital's substantial, though largely unsolicited contacts with South Carolina. We explained that Lee was informed by the consideration of "whether there [was] `any other state whose courts might provide a more likely forum.'" 745 F.2d at 912 (quoting Lee, 482 F.2d at 299). Finally, in Nichols v. G.D. Searle & Co., 991 F.2d 1195 (4th Cir. 1993), we followed Ratliff and held that a court in Maryland could not assert general jurisdiction over a company that employed 13 Maryland residents as sales representatives and one Maryland resident as a district manager. Moreover, the defendant held district meetings three times annually in Maryland, held regional and national meetings twice annually, and had between $9 million and $13 million annual sales in Maryland, constituting two percent of its total sales. In addition, the defendant contracted with the Maryland firm for pharmaceutical research and made roughly one percent of its annual purchases in Maryland. Although the fact that none of the plaintiffs in Nichols were Maryland residents entered into our analysis, see id. at 1199 n.3, residency alone was not dispositive of the issue of whether the defendant had sufficient contacts to warrant jurisdiction. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 779-80 (1984) ("[p]laintiff's residence in the forum State is not a separate requirement, and lack

8

of residence will not defeat jurisdiction established on the basis of defendant's contacts"). Indeed, a forum state's interest in adjudicating the claims is merely one factor to consider once the defendant's contacts with the state have been established. See , e.g., id.

When compared with the level of contacts that we found insufficient in both Ratliff and Nichols, Centricut's contacts with South Carolina are far less extensive. Moreover, we do not find Centricut's contacts to be constitutionally sufficient even when we consider that, unlike Nichols, South Carolina courts in this case would be seeking to vindicate the interests of their own citizens. Centricut's South Carolina contacts are not even as extensive as those present in Lee, where there was the additional consideration that no state had an obvious connection with the cause of action. In sum, we conclude that South Carolina may not exercise general jurisdiction over Centricut and Aley consistent with the constitutional guarantee of due process. Accordingly, a federal district court cannot do so pursuant to Federal Rule Civil Procedure 4(k)(1)(A).

B

Even if Centricut's contacts with South Carolina are not sufficiently continuous and systematic to justify general jurisdiction, the ESAB Group contends that specific jurisdiction may nonetheless be exercised as to the causes of action before the court. With respect to specific jurisdiction, "[t]he touchstone . . . remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." Lesnick, 35 F.3d at 945. The contacts related to the cause of action must create a "substantial connection" with the forum state, see McGee v. International Life Ins. Co. , 355 U.S. 220, 223 (1957), although this connection need not be as extensive as is necessary for general jurisdiction. As with general jurisdiction, however, the defendant's actions must be directed at the forum state in more than a random, fortuitous, or attenuated way. See Burger King, 471 U.S. at 475; Keeton, 465 U.S. at 774; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980).

In the case before us, New Hampshire residents Centricut and Aley allegedly entered into a relationship with Bergen, a resident of Florida. All relations among the three were carried out in and between

9

New Hampshire and Florida. The only South Carolina "contact" related to this suit is that Centricut and Aley knew that the sales leads that Bergen supplied might, if fruitful, ultimately result in less sales to the ESAB Group, which was headquartered in South Carolina. Indeed, at the very most, it can be said that Centricut intended to gain a competitive advantage (allegedly tortiously) over the ESAB Group by making sales which the ESAB Group might otherwise have made. We believe, however, that such knowledge and intent is too attenuated to constitute a "substantial connection" with South Carolina. The evidence presented indicates that Bergen's leads were for companies located across the United States and Canada. Only one such company appears to have been located in South Carolina, and the evidence presented indicates that no sales in South Carolina were ever made based upon Bergen's leads. This activity, standing alone, does not support proof of an intent by Centricut to avail itself of the privilege of conducting activities in South Carolina. See Hanson, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state"). Nor does it manifest behavior intentionally targeted at and focused on South Carolina, see Calder v. Jones, 465 U.S. 784, 789-90 (1984) (jurisdiction of forum state upheld where libel "expressly aimed" at forum state with knowledge that "potentially devastating impact" would be felt there), such that Centricut can be said to have "entered" South Carolina in some fashion, see Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410, 412 (7th Cir. 1994) (discussing Calder). Instead, Centricut focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina. Cf. Calder , 465 U.S. at 789 (distinguishing case before it from "untargeted" conduct).

The ESAB Group contends, however, that, wherever the sales were made by Centricut, and thus lost by the ESAB Group, they were ultimately felt in South Carolina at the ESAB Group's headquarters. While this is undoubtedly true, when unaccompanied by other contacts, it is ultimately too unfocused to justify personal jurisdiction. See Indianapolis Colts, 34 F.3d at 412 (noting that in cases upholding jurisdiction based on injury in the forum state to intellectual property or reputation, "[t]he defendant had also `entered' the state in some fashion"). Instead of grounding jurisdiction on a defendant's decision

10

to "purposely avail[ ] itself of the privilege of conducting activities within the forum state," Hanson, 357 U.S. at 253, or on a defendant's activities "expressly aimed" at the forum state, Calder, 465 U.S. at 789, jurisdiction would depend on a plaintiff's decision about where to establish residence. Such a theory would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff always feels the impact of the harm there. Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld. Because those contacts in this case were too attenuated and insubstantial to provide a constitutionally sufficient basis for South Carolina courts to exercise either specific or general in personam jurisdiction over Centricut, the district court could not exercise in personam jurisdiction pursuant to service under Rule 4(k)(1)(A).

III

Although we conclude that personal jurisdiction may not be exercised over Centricut and Aley under Federal Rule of Civil Procedure 4(k)(1)(A) because a South Carolina court could not assert such jurisdiction, we must now address the ESAB Group's alternative basis for personal jurisdiction based on 18 U.S.C. § 1965(b).

One of the sources enumerated in Federal Rule of Civil Procedure 4(k) for service that effectively enables the exercise of personal jurisdiction over a defendant is "a statute of the United States." See Fed. R. Civ. P. 4(k)(1)(D). In this case, a federal statute does authorize such service.

In enacting the Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922 (1970), reprinted in 1970 U.S.C.C.A.N. 1073, Congress prohibited various activities generally associated with organized crime. See 18 U.S.C. § 1962. In addition to providing criminal penalties, see 18 U.S.C. § 1963, Congress granted a private civil right of action to "[a]ny person injured in his business or property by reason of a violation of" the RICO provisions. 18 U.S.C. § 1964(c). The RICO statute authorizes venue for civil actions in any district in which the defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). And it authorizes service of process "in

11

any judicial district in which such person resides, is found, has an agent, or transacts his affairs," 18 U.S.C. § 1965(d), evidencing Congress' desire that "[p]rovision [be] made for nationwide venue and service of process." H. Rep. No. 91-1549, at 4 (1970), reprinted in 1970 U.S.C.C.A.N. 4007, 4010. Although 18 U.S.C.§ 1965 is entitled "Venue and process," the fact that it also authorizes service of process makes it relevant to personal jurisdiction because of Federal Rule of Civil Procedure 4(k)(1)(D). "Where," as here, "Congress has authorized nationwide service of process . . . so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant." Hogue v. Milodon Eng'g, Inc., 736 F.2d 989, 991 (4th Cir. 1984); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997) (section 1965(d) of RICO statute, providing for service in any judicial district in which defendant is found, provides statutory basis for personal jurisdiction).

The due process constraint on service under Federal Rule of Civil Procedure 4(b)(1)(D), is not, however, grounded in the Fourteenth Amendment, which circumscribes service under state process pursuant to Rule 4(b)(1)(A). See Republic of Panama , 119 F.3d at 942; Hogue, 736 F.2d at 991. Rather, it is the Due Process Clause of the Fifth Amendment which constrains the exercise of the federal government's sovereign powers. See id.; Omni Capital, 484 U.S. at 103-04; Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites, 456 U.S. 694, 702 n.10 (1982). The Fifth Amendment's Due Process Clause not only limits the extraterritorial scope of federal sovereign power, but also protects the liberty interests of individuals against unfair burden and inconvenience. See, e.g., Republic of Panama, 119 F.3d at 945-48; cf. World-Wide Volkswagen, 444 U.S. at 291-92 (noting that the minimum contacts test under the Fourteenth Amendment's Due Process Clause functions both to protect states in their status as equal sovereigns and to protect individuals against unfair burden and inconvenience). However, when the defendant is located within the United States, he "must look primarily to federal venue requirements for protection from onerous litigation," Hogue, 736 F.2d at 991, because "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern," Republic of Panama, 119 F.3d at 947.

12

In this case, both Centricut and Aley have been served with process in a judicial district where they respectively reside, are found, or transact their affairs. Because they have been validly served pursuant to RICO's nationwide service provision, 18 U.S.C.§ 1965(d), in personam jurisdiction over them is established, provided that such jurisdiction comports with the Fifth Amendment. We believe that it does, discerning no evidence from the record in this case of such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy of allowing the assertion of in personam jurisdiction in South Carolina. See 4 Wright & Miller, § 1067.1, at 331 (1987) (congressional policy choice that includes nationwide service of process "should be afforded substantial weight"); see also Republic of Panama, 119 F.3d at 948 (noting that "the burden is on the defendant" to show that the burden of distant litigation is so great as to put him at a "severe disadvantage"). Nor do we believe the dictates of judicial efficiency counsel so strongly against a federal forum in South Carolina that constitutional due process is offended. While there is no doubt some inconvenience to the defendants in having to defend this action in South Carolina, it is not so extreme as to defeat the exercise of personal jurisdiction pursuant to valid service of process, although it may certainly factor into a transfer decision. See id. at 947 n.25. Accordingly, we hold that the district court in South Carolina may constitutionally exercise in personam jurisdiction over both Centricut and Aley.

In so holding, we do not decide any issues of venue raised by the defendants. We note that although the district court essentially found that Centricut transacts its affairs in South Carolina by virtue of having suppliers and customers there, it made no findings as to whether Aley "transacts his affairs" (emphasis added) in South Carolina, as is required by 28 U.S.C. § 1965(a). That may mean that with respect to Aley venue is not proper in South Carolina under § 1965(a). The district court may ultimately have to decide whether venue is proper, either under 18 U.S.C. § 1965(a) or (b), or under the general venue statutes. The question of in personam jurisdiction, however, depends on whether service of process has been authorized. Section 1965(d) authorizes service of process "in any judicial district in which such person . . . is found." Because service was accomplished on the defendants where they were found, personal jurisdiction was established.

13

IV

Even though the district court has personal jurisdiction over the defendants to adjudicate the RICO claim because of its authorization for nationwide service of process, the question remains whether that service authorizes the district court to assert personal jurisdiction over the defendants to adjudicate the state law claims against them. If a defendant's conduct in the forum state provides insufficient contacts with the state to justify specific long-arm jurisdiction, two questions arise: First, whether the defendant has reasonable expectations not to be tried there on the state claims, which may not even arise under the laws of the forum state; and second, whether the defendant in these circumstances has a constitutional protection against adjudication of the state claims against him in a state which is not authorized to assert personal jurisdiction over him. These questions have not been answered in this circuit.

The existence of these questions highlights the substantial variations in authorization provided by the sources enumerated in Federal Rule of Civil Procedure 4(k) for service of process. Even for federal claims, the effective territorial authority of the federal court may differ significantly from case to case, depending on the federal statute involved. For example, if the claim is based on a federal statute authorizing nationwide service of process, personal jurisdiction may be asserted over a defendant anywhere in the country, whereas if the statute creating the federal claim does not provide for nationwide service of process, process may extend only to the boundaries of the state in which the district lies. This poses an infrequently presented question: If a case includes a claim brought under a federal statute authorizing a nationwide service of process and another claim under a statute or under state law for which nationwide service of process is not available, does the court have personal jurisdiction over the defendant to adjudicate the entire case?

A somewhat analogous problem arose in the context of subject matter jurisdiction, which, of course, is quite distinct in principle from personal jurisdiction. See Compagnie des Bauxites, 456 U.S. at 701-05. Nevertheless, the analogy is useful. To resolve the problem of whether a federal court which is presented with the resolution of a federal claim may also resolve state claims arising out of the same

14

nucleus of operative fact, the Supreme Court developed the doctrine of pendent jurisdiction. See, e.g., United Mine Workers v. Gibbs, 383 U.S. 715 (1966). Under that doctrine, when a claim authorized by federal law and by Article III of the Constitution is properly in a federal court, and that claim is so related to a state claim not independently subject to federal jurisdiction that the two may be considered "one constitutional case," the federal court has pendent jurisdiction to adjudicate the state claim. Id. at 725. The Court articulated the necessary and proper relationship between the claims that they "must derive from a common nucleus of operative fact." Id . But even so, pendent jurisdiction is a discretionary power which is exercised in furtherance of "judicial economy, convenience and fairness to the litigants." Id. at 726. The doctrine has since been codified at 28 U.S.C. § 1367.

We believe that similar considerations urge that we recognize pendent personal jurisdiction of a district court which has obtained personal jurisdiction over a defendant by reason of a federal claim to adjudicate state claims properly within the court's subject matter jurisdiction, even though that state's long-arm statute could not authorize service over the defendants with respect to the state claims.

When a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact. The defendant will have to adjudicate the facts of the federal claim, and it could impose only a minimal burden to require the defendant to provide a defense on the factually-related state claim. We agree with the observation that

> judicial economy and convenience of the parties is best facilitated by a consideration of all legal theories arising from a single set of operative facts. . . . Once that set of facts and defendants are legitimately before th[e] court . . . little would be gained by not requiring a defendant to defend against a certain type of theory superimposed upon those facts.

15

Sohns v. Dahl, 392 F. Supp. 1208, 1218 (W.D. Va. 1975). Accordingly, we conclude that under the doctrine of pendent personal jurisdiction, the district court has authority over the defendants to decide both the federal and the state claims alleged against them. In recognizing pendent personal jurisdiction, we join the other circuits that have done so. See IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993); see also Oetiker v. Jurid Werke, G.m.b.H., 556 F.2d 1, 4-5 (D.C. Cir. 1977); Robinson v. Penn Central Co., 484 F.2d 553, 555 (3d Cir. 1973).

Our recognition of pendent personal jurisdiction should present no constitutional objection any more serious than did pendent jurisdiction involving the court's subject matter jurisdiction. Once a court has a constitutional case, in the Article III sense, properly before it, service by a court sufficient to assert personal jurisdiction over a defendant by any authorized mechanism consistent with due process may be held to apply to the entire constitutional case. In this case, the parties agree that the federal court has subject matter jurisdiction over the ESAB Group's claims and is thus competent to adjudicate them. They also agree that the factual nucleus for the state claims and the RICO claim is the same. Since the court has personal jurisdiction over the defendants under service of process authorized by the Federal Rule of Civil Procedure 4(b)(1)(D) and by the RICO statute, we can find no constitutional bar to requiring the defendants to defend the entire constitutional case, which includes both federal and state claims arising from the same nucleus of facts, so long as the federal claim is not wholly immaterial or insubstantial. See Republic of Panama, 119 F.3d at 942, 951 & n.26.

For the reasons provided in this opinion, we reverse the ruling of the district court that the defendants were properly served under South Carolina's long-arm statute but affirm its conclusion that the district court has personal jurisdiction over Centricut and Aley. The case is remanded for further proceedings.

IT IS SO ORDERED

16