**WOODS INTERNATIONAL, INC., Plaintiff,**

v.

**B.J. McROY d/b/a The Widow's Walk, Defendant.**

**No. 1:05CV0089.**

United States District Court, M.D. North Carolina.

June 20, 2006.

Jack Bremer Hicks, John F. Morrow, Jr., Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for Plaintiff.

B.J. McRoy, Louisville, KY, Pro se.

*MEMORANDUM OPINION*

BEATY, District Judge.

This matter is before the Court on a Motion to Dismiss [Document # 4] filed by Defendant B.J. McRoy ("Ms. McRoy" or "Defendant"). For the reasons discussed below, the Court concludes that it does not have personal jurisdiction over Ms. McRoy in this case. Therefore, the Motion to Dismiss filed by Defendant McRoy [Document # 4] will be GRANTED and the claims against Ms. McRoy will be dismissed without prejudice.

## I. FACTUAL BACKGROUND

Plaintiff Woods International, Inc. ("Plaintiff") is a corporation organized and existing under the laws of the state of North Carolina, with its principal place of business in High Point, North Carolina. Plaintiff is in the business of, among other things, creating, manufacturing or having manufactured, and selling ornamental tree decorations with facial features. Defendant B.J. McRoy is an individual residing in Louisville, Kentucky. In 2004, Ms. McRoy was doing business as "The Widow's Walk," an unincorporated business in Clarksville, Indiana. As part of that business, Ms. McRoy also made and sold tree decorations with facial features.

On December 9, 2004, Ms. McRoy sent a letter to Plaintiff accusing Plaintiff of infringing two of Ms. McRoy's allegedly copyrighted ornamental tree decorations, and demanding the Plaintiff cease and desist its alleged infringing conduct. Ms. McRoy sent a similar letter to one of Plaintiff's largest tree decorations customers, Casual Living USA, Inc., at its business address in Tampa, Florida. As a result, Plaintiff filed the present lawsuit seeking a Declaratory Judgment that its products do not infringe Ms. McRoy's products and/or that Ms. McRoy's copyright claims are invalid, and also asserting claims for unfair competition, interference with economic relations, and unfair trade practices, based on Ms. McRoy's actions in contacting Plaintiff's customer, Casual Living, in Florida.

Ms. McRoy has moved to dismiss, contending that this Court lacks personal jurisdiction over her. In support of her Motion to Dismiss, Ms. McRoy has submitted an affidavit outlining her factual contentions. Specifically, Ms. McRoy avers that she is not a resident of North Carolina, she does not conduct business in North Carolina, she does not have a business location in North Carolina, and she does not have customers in North Carolina. Ms. McRoy further avers that she has not traveled to North Carolina for the purpose of soliciting business or providing service to any purported customers in North Carolina, she has not attended any trade shows in North Carolina, she has not mailed solicitations to North Carolina, and she has not negotiated, signed or performed contracts in North Carolina. Ms. McRoy also notes that to the best of her

knowledge and belief, she is not aware of any customers of hers who have any stores or franchisees in North Carolina that carry her products, she has not directly solicited or sought to provide any product or business service to prospective customers in North Carolina, and she has not taken an order from any person or entity residing in North Carolina. Ms. McRoy further notes that she is not even aware of any of her customers reselling any of her products in North Carolina or to any resident or business located in North Carolina, other than possibly a single $150 shipment in 2002 or 2003 which she sold to an Indiana wholesaler who then sold the merchandise to a North Carolina resident at a trade show which took place in Kentucky. Finally, Ms. McRoy notes that the cease and desist letter to Plaintiff's customer, Casual Living, was mailed to Casual Living's offices in Tampa, Florida, not to North Carolina. Ms. McRoy further avers that she is not aware of any business location or office of Casual Living in North Carolina.

In response, Plaintiff contends that the exercise of personal jurisdiction over Ms. McRoy is proper in this case because (1) Ms. McRoy sent a cease and desist letter to Plaintiff at their High Point, North Carolina offices; (2) a single $150 shipment of Ms. McRoy's products was sold by one of Ms. McRoy's Indiana customers to a North Carolina resident at a trade show in Kentucky and was sent to North Carolina in 2002 or 2003, as stated in Ms. McRoy's affidavit; (3)Ms. McRoy maintained a website at *www.widowswalk.org* that advertised her products and was accessible in North Carolina; and (4) Ms. McRoy caused damage to Plaintiff in North Carolina by sending a cease and desist letter to Plaintiff's customer, Casual Living, in Florida. The Court will consider these contacts as alleged by Plaintiff in analyzing Ms. McRoy's Motion to Dismiss.

## II. PERSONAL JURISDICTION STANDARDS

### A. General Standards for Personal Jurisdiction

■ Federal courts may assert "personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.2003) (construing Fed.R.Civ.P. 4(k)(1)(A)). To exercise personal jurisdiction over a nonresident defendant, "the exercise of jurisdiction must be authorized under the state's long-arm statute" and "the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* North Carolina's long-arm statute provides for personal jurisdiction in "any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party ... is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C. Gen.Stat. § 1–75.4(1)(d). This statute has been interpreted as extending to the full extent permitted by the Constitution. *See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001); *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977) ("By the enactment of G.S. 1–75.4(1)(d), it is apparent that the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process."). To satisfy due process, the defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,*

326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted).

■■■ Personal jurisdiction over a defendant may be either "general" relating to any course of action or "specific" and related to the particular course of action. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir.2002). Specific jurisdiction can be found "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). In such a case, "the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). In contrast, general jurisdiction exists even if "defendant's contacts with the State are not also the basis for suit" when the defendant has "general, more persistent, but unrelated contacts with the State." *ALS Scan*, 293 F.3d at 712.

B. Requirements for Asserting General Jurisdiction

■■ For a court to exercise general jurisdiction, the defendant's contacts with the forum state must be "continuous and systematic." *See Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1873. This is a rigorous standard. *See ALS Scan*, 293 F.3d at 715 ("[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."); *ESAB Group Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). For example, in *Nichols v. G.D. Searle & Co.*, the Fourth Circuit held that general jurisdiction did not exist despite a defendant's numerous contacts with the forum state, including employing fourteen forum state residents, holding five large meetings annually in the forum state, and earning between $9 million and $13 million in revenues in the forum state annually. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir.1993) ("[B]road constructions of general jurisdiction should be generally disfavored."); *cf. Estate of Stephen Bank v. Swiss Valley Farms, Co.*, 286 F.Supp.2d 514, 517–18 (D.Md.2003) ("[W]ith regard to non-residents, general jurisdiction is ordinarily reserved for those defendants who have such substantial contacts with the forum state that they may be considered 'essentially domiciled' within that state.") (citation omitted).

In addition, with regard to contacts based upon Internet activity, the Fourth Circuit has held that it is not ready to "recognize that a State may obtain general jurisdiction over out-of-state persons who regularly and systematically transmit electronic signals into the State via the Internet based solely on those transmissions." *ALS Scan*, 293 F.3d at 715. Thus, even regular and systematic contact with the State via the Internet, without "something more," is insufficient to establish general jurisdiction. *Id.* (stating that "[s]omething more would have to be demonstrated"). Before applying this standard in the present case, the Court will consider the alternative standard for exercising "specific" personal jurisdiction even where the Court lacks "general" personal jurisdiction over a person or entity.

C. Requirements for Asserting Specific Jurisdiction

If a defendant does not have sufficient contacts to establish general jurisdiction, specific jurisdiction can be found "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872. Generally, in deciding whether specific jurisdiction exists, the Court will con-

sider "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan*, 293 F.3d at 712.

With regard to Internet-based contacts, the Fourth Circuit has noted that "technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant." *Id.* at 711. In analyzing Internet-based contacts, the Fourth Circuit has adopted the "sliding scale" test first articulated in *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119 (W.D.Pa.1997):

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*ALS Scan*, 293 F.3d at 713–14 (quoting *Zippo*, 952 F.Supp. at 1124). Thus, a pas-

sive website that merely displays information does not support personal jurisdiction, without "something more." *See ALS Scan*, 293 F.3d at 713–14; *see also Young v. New Haven Advocate*, 315 F.3d 256, 261–62 (4th Cir.2002) (holding that accessibility alone cannot establish personal jurisdiction); *Carefirst*, 334 F.3d at 399 (noting that the act "of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed." (internal quotations omitted)).

■ Based on this model, the Fourth Circuit has concluded that personal jurisdiction may be asserted over a nonresident when "that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714; *see also Carefirst*, 334 F.3d at 400 ("[T]he company must have done something more than merely place information on the Internet" and instead "must have acted with the 'manifest intent' of targeting [forum state residents]."); *ESAB Group*, 126 F.3d at 625–26 (noting that a defendant focusing generally on customers throughout the United States is not enough to support personal jurisdiction; rather, the defendant must focus on and target the forum state).

■ In addition, the Fourth Circuit has held that the fact that the plaintiff suffers injury in the forum state is insufficient alone to establish personal jurisdiction. *See ESAB Group*, 126 F.3d at 626. Specifically, the Fourth Circuit has held that while a plaintiff may suffer a loss of sales or potential injury in the forum state, the fact that the plaintiff feels the effects in the forum state, "when unaccompanied by other contacts, ... is ultimately too unfo-

cused to justify personal jurisdiction." *Id.* at 625. "Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *Id.* at 626; *see also Young*, 315 F.3d at 262 (noting that where the effects are felt in the forum state, it is nevertheless important to look at whether the defendant has expressly aimed or directed its conduct toward the forum state). Therefore, to satisfy the "effects test," the plaintiff must establish that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Carefirst*, 334 F.3d at 398 n. 7.

## III. APPLICATION OF PERSONAL JURISDICTION STANDARDS

Having set forth this framework and Fourth Circuit guidance for assessing personal jurisdiction, the Court will now apply those guidelines in the present case. When personal jurisdiction is contested under Federal Rule of Civil Procedure 12(b)(2), the Court conducts an inquiry into whether personal jurisdiction exists. *Carefirst*, 334 F.3d at 396. Where the Court, as here, decides a Rule 12(b)(2) motion without an evidentiary hearing, the Plaintiff must establish a prima facie showing of personal jurisdiction to defeat the challenge. *Id.* The Court views all disputed facts and makes reasonable inferences in favor of the Plaintiff in determining whether such a showing has been made. *Id.*

As previously noted, Plaintiff in the present case offers the following contacts to support the exercise of general and specific personal jurisdiction: (1) Ms.

McRoy sent a cease and desist letter to Plaintiff at its High Point, North Carolina offices; (2) a single $150 shipment of Ms. McRoy's products was sold by one of Ms. McRoy's Indiana customers to a North Carolina resident at a trade show in Kentucky and was shipped to North Carolina; (3) Ms. McRoy maintained a website at *www.widowswalk.org* that advertised her products and was accessible in North Carolina; and (4) Ms. McRoy caused damage to Plaintiff in North Carolina by sending a cease and desist letter to Plaintiff's customer, Casual Living, in Florida.

■ After reviewing these allegations, the Court concludes first that Plaintiff's allegations are not sufficient to establish general jurisdiction in North Carolina. *Cf. ALS Scan*, 293 F.3d at 715; *Nichols*, 991 F.2d at 1200. Specifically, there is no indication that Ms. McRoy was engaged in "continuous and systematic" activities in North Carolina in order to subject her to general jurisdiction within this Court. Therefore, the Court's analysis of the jurisdictional issue in this case will focus on whether Plaintiff's allegations are sufficient to establish specific jurisdiction over Ms. McRoy related to Plaintiff's claims in this case.

■ With respect to Plaintiff's contention that specific jurisdiction exists here, the Court notes first that, based on the evidence presented by Plaintiff, it appears that Ms. McRoy maintained a passive, non-interactive website (as defined in *Zippo* ), which described her tree decoration products. However, the website did not accept orders, and instead simply described Ms. McRoy's products and gave contact information for her in Indiana. In addition, there is nothing on Ms. McRoy's website relating to North Carolina or showing any intent to target North Carolina or engage in business in North Carolina. Having reviewed the evidence presented by Plain-

tiff, the Court concludes that the passive, non-interactive website maintained by Ms. McRoy does not indicate a manifest intent to target and focus on North Carolina when viewed in conjunction with the overall character of the website. *Cf. Young*, 315 F.3d at 264; *Carefirst*, 334 F.3d at 400; *ALS Scan*, 293 F.3d at 714. Therefore, based on the standards outlined above, personal jurisdiction does not attach to Ms. McRoy based on her establishment of the "widow's walk" website.

■ With regard to the single shipment of Ms. McRoy's products to North Carolina in 2002 or 2003, the Court notes first that this shipment was not sold by Ms. McRoy to a North Carolina resident, but was rather an indirect sale by Ms. McRoy to an Indiana wholesaler, who just happened to then sell the product to a North Carolina resident at a trade show in Kentucky. Even if the Court were to consider that shipment as a contact by Ms. McRoy with North Carolina, this lawsuit does not relate to that shipment, and Plaintiff has not brought a claim in the present action alleging that those shipments by Ms. McRoy into North Carolina infringed on their copyrights. Therefore, the Court concludes that that shipment would not form the basis for specific jurisdiction in the present case because the claims in the present case do not "arise out of" that prior shipment of products. *See, e.g., Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872 (noting that specific jurisdiction analysis is appropriate "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum . . . .") (citation omitted).

■ With regard to the cease and desist letter sent by Ms. McRoy to Plaintiff at its business address in High Point, North Carolina, the Court notes that, in general, a cease and desist letter alone is not a sufficient basis to establish personal jurisdiction. *See Red Wing Shoe Co. v.*

*Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed.Cir.1998) (holding that in a declaratory judgment action, personal jurisdiction may not be exercised constitutionally when the defendant's contact with the forum state is limited to cease and desist letters "without more"); *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) ("A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter."). In the present case, Ms. McRoy did not attempt to solicit business in North Carolina or enter into any agreement or business relationship in North Carolina. Instead, Ms. McRoy's contact was limited to sending a single cease and desist letter to Plaintiff at its offices in High Point, North Carolina. The Court concludes that this letter is not sufficient to support the assertion of personal jurisdiction over Ms. McRoy in this Declaratory Judgment action.

■ Finally, with regard to Plaintiff's assertion that personal jurisdiction exists here because it suffered injury in North Carolina based on Ms. McRoy's letter to Plaintiff's customer, Casual Living, in Florida, the Fourth Circuit has emphasized that "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant . . . it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld." *ESAB Group*, 126 F.3d at 626. In this case, Ms. McRoy's cease and desist letter to Casual Living was sent to Florida, not North Carolina. There is no evidence that Ms. McRoy engaged in any negotiations or discussions with Casual Living, other than the cease and desist letter sent to Casual Living in Florida. Even if that letter could support Plaintiff's state law claims for tortious interference or unfair trade

practices, the effects of which Plaintiff felt in North Carolina, there is no evidence that Ms. McRoy "expressly aimed [her] tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Carefirst,* 334 F.3d at 398 n. 7. Therefore, the Court concludes that the cease and desist letter sent by Ms. McRoy to Casual Living in Florida would not support the assertion of personal jurisdiction over Ms. McRoy in North Carolina.

■■■ Having reviewed all of the allegations presented by Plaintiff, the Court notes that the overall nature of Ms. McRoy's contacts with North Carolina is *de minimis.* In sum, the contacts presented by Plaintiff, when taken together, do not arise to the level of being "so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state." *ESAB Group,* 126 F.3d at 623. For all of these reasons, the Court concludes that it would offend fundamental notions of fair play and substantial justice to require Ms. McRoy to be haled into North Carolina and made subject to the jurisdiction of this Court. Therefore, the Court concludes that it is not proper to exercise personal jurisdiction, either general or specific, over Defendant McRoy. For the reasons stated herein, Defendant McRoy's Motion to Dismiss [Document # 4] will be granted and Plaintiff's claims will be dismissed without prejudice to

Plaintiff's ability to assert those claims in an appropriate forum, and also without prejudice to Plaintiff's ability to file a subsequent suit in this Court if Ms. McRoy engages in additional, more substantial contacts with North Carolina.[1]

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that it does not have personal jurisdiction over Defendant B.J. McRoy. Therefore, Defendant McRoy's Motion to Dismiss for Lack of Jurisdiction [Document # 4] will be GRANTED and the claims against Defendant McRoy will be DISMISSED WITHOUT PREJUDICE.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

### ORDER

For the reasons discussed in the Memorandum Opinion filed contemporaneously herewith, IT IS ORDERED that Defendant B.J. McRoy's Motion to Dismiss for Lack of Jurisdiction [Document # 4] is GRANTED and the claims against Defendant McRoy are hereby DISMISSED WITHOUT PREJUDICE.

---

1. The Court notes, however, that it appears that Defendant is no longer maintaining her website, since the "widowswalk.org" website is not presently accessible or in existence as of the date of this Memorandum Opinion. In addition, it appears that Defendant no longer owns or operates "The Widow's Walk" in Clarksville, Indiana. Therefore, although there may have been some reasonable apprehension of litigation at the time this Declaratory Judgment action was filed, that risk of litigation may now have dissipated and there may no longer be an actual controversy between the parties. However, the Court need not reach that issue in the present case given the Court's ruling with respect to personal jurisdiction. In any event, the Court notes that if there is still an actual controversy sufficient to satisfy the Declaratory Judgment Act, Plaintiff may bring its suit against Defendant in a court in which she is subject to personal jurisdiction.