**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD D. STOVER,
Plaintiff-Appellant,

v.

No. 94-1309

O'CONNELL ASSOCIATES,
INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CA-93-1936-HAR)

Argued: January 29, 1996

Decided: May 14, 1996

Before HALL, NIEMEYER, and LUTTIG, Circuit JUDGES.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Hall and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** William Thomas Fitzhugh, BEDDOW, MARLEY, BUR-
GESS & ASSOCIATES, Chesterfield, Virginia, for Appellant.
Andrew Jay Graham, KRAMON & GRAHAM, P.A., Baltimore,
Maryland, for Appellee. **ON BRIEF:** Kevin F. Arthur, KRAMON &
GRAHAM, P.A., Baltimore, Maryland, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

In this case, we revisit the statutory and constitutional limits of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103. Assuming that the statute extends jurisdiction to the limits of due process, we hold that Maryland courts may, nonetheless, not exercise personal jurisdiction over a New York private investigation firm whose only connection with Maryland was its occasional retention by telephone of Maryland investigation companies to provide it with information about Maryland subjects, including the plaintiff in this case. Accordingly, we affirm the judgment of the district court dismissing the case for lack of personal jurisdiction over the defendant.

I

When Richard D. Stover, a Maryland resident, obtained a copy of his consumer credit file in September 1992, he discovered that O'Connell Associates, Inc., a New York private investigation company, had requested and obtained information about him from Equifax Corporation. While Stover suspects that O'Connell Associates requested the information because of his work with Ross Perot's presidential campaign, he acknowledges that he has never been informed of O'Connell's reason for requesting the information and makes no allegations concerning O'Connell's purpose for requesting the information or the persons to whom the information was submitted. He claims, however, that because consumer reports may be furnished only for limited purposes, O'Connell violated the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., its Maryland analog, Md. Code Ann., Com. Law II § 14-1201 et seq ., and his common law right to privacy. He alleges that O'Connell's conduct caused him injury in Maryland, for which he demands $50,000 in compensatory damages and $100,000 in punitive damages.

O'Connell filed a motion under Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint, contending that it was not subject to personal jurisdiction in Maryland. While representing that it had never had property or agents in Maryland, O'Connell acknowledged

2

that it had occasionally used Maryland investigation firms to obtain information about Maryland subjects.

In connection with its investigation of Stover, O'Connell states that, through use of a computer terminal in its New York office, it obtained Stover's name, address, birthdate, social security number, and place of employment from Equifax. O'Connell also acknowledges that it telephoned Montgomery Investigative Services, Ltd., a licensed private investigation firm in Rockville, Maryland, and retained that firm to conduct a "criminal check" on Stover and determine whether Stover had "any ties to KKK or any known white supremist [sic] group." O'Connell maintains that from Montgomery Investigative Services it received information only from public court records. It asserts that it provided the information procured from Equifax and Montgomery Investigative Services to its client in California.

On O'Connell's motion to dismiss, the district court concluded that O'Connell's "intermittent historical contacts" with Maryland were not sufficiently "extensive, continuous and systematic" to sustain general jurisdiction over O'Connell. The court also concluded that it did not have specific jurisdiction over O'Connell because Stover's claims did not arise out of any conduct by O'Connell in Maryland; all of O'Connell's conduct had occurred in New York. Accordingly, the district court granted O'Connell's motion to dismiss the complaint for lack of personal jurisdiction.

From the district court's dismissal order, this appeal was taken.

II

In analyzing a challenge to a court's exercise of personal jurisdiction, we first consider whether the state's long-arm statute authorizes the exercise of jurisdiction over the defendant, and if we conclude that it does, we then determine whether the exercise of jurisdiction comports with the Fourteenth Amendment due process requirements. See Ellicott Mach. Corp. v. John Holland Party, Ltd., 995 F.2d 474, 477 (4th Cir. 1993); First American First, Inc. v. National Ass'n of Bank Women, 802 F.2d 1511, 1513-14 (4th Cir. 1986).

3

Stover contends that O'Connell's conduct in obtaining "a copy of Stover's consumer credit report" from Equifax and in retaining Montgomery Investigative Services to determine whether Stover had "any ties to [the] KKK" or similar groups violated federal and state consumer protection laws and his common law right to privacy. Stover maintains that because O'Connell invaded his privacy in Maryland, causing tortious injury in the state by acts in the state, the requirements of Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3) are satisfied. Focusing on "O'Connell's other investigations of Maryland residents," however, Stover rests his principal jurisdictional claim on § 6-103(b)(4), which subjects a defendant to jurisdiction for conduct outside the state if the defendant has engaged in a "persistent course of conduct" in Maryland. On the federal due process issue, Stover argues that O'Connell "purposefully directed its tortious activity" at him, thereby causing him injury within Maryland. He maintains that tortious activity conducted outside a state that causes injury within the state "is a sufficient contact to comport with federal due process" under Calder v. Jones, 465 U.S. 783 (1984).

Section 6-103(b)(3) of Maryland's long-arm statute provides that a Maryland court may exercise jurisdiction over a person outside the state who "[c]auses tortious injury in the State by an act or omission in the State." (Emphasis added). While Stover may be able to establish that O'Connell caused injury in Maryland, he cannot sustain his claim that O'Connell's injury-causing acts occurred in the state. The evidence demonstrates that O'Connell's conduct occurred entirely in New York State where O'Connell used a computer terminal to obtain information from Equifax and telephoned a licensed Maryland private investigation company to retain the firm to conduct a "criminal check." Although Montgomery Investigative Services did operate in Maryland, Stover cannot impute any of that firm's activities to O'Connell on an agency theory because there is no evidence that O'Connell controlled those activities. See Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56, 61 (4th Cir. 1993). O'Connell simply asked Montgomery Investigative Services to provide certain information. The Maryland firm selected the means and method of the investigation and used its own employees to fulfill O'Connell's request.

The statutory provision upon which Stover must rely, therefore, is § 6-103(b)(4), which authorizes a Maryland court to exercise personal

4

jurisdiction over any person who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly . . . engages in any other persistent course of conduct in the State." Stover argues that even though O'Connell is not present in Maryland, its admitted prior investigatory efforts in Maryland constitute a "persistent course of conduct in the State."

In defining the reach of Maryland's long-arm statute, Maryland courts have concluded that the state legislature intended to expand Maryland's exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment. See Camelback Ski Corp. v. Behning, 513 A.2d 874, 876 (Md. 1986), vacated and remanded on other grounds, 480 U.S. 901 (1987).* Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one. See Ellicott Mach. Corp., 995 F.2d at 477; see also Mohamed v. Michael, 370 A.2d 551, 553 (Md. 1977). Accordingly, we direct our inquiry to whether O'Connell's activities in Maryland constituted sufficient minimum contacts with Maryland such that maintenance of suit against O'Connell in Maryland comports with the demands of due process.

_____

*Were we to read Maryland's long-arm statute naturally, we might question the Maryland courts' interpretation, at least with respect to the constitutional limits of specific jurisdiction. Cf. Beaty v. M.S. Steel Co., 401 F.2d 157 (4th Cir. 1968), cert. denied, 393 U.S. 1049 (1969). Section 6-103(b)(3) reaches persons whose actions take place in the state and cause tortious injury in the state; it does not reach persons whose actions outside the state cause tortious injury in the state. Cf. Calder v. Jones, 465 U.S. 783 (1984) (upholding exercise of personal jurisdiction over defendants whose out-of-state activities caused injury in forum state). While § 6-103(b)(4) covers out-of-state conduct that causes injury in the forum state, its plain language would appear to require greater contacts than the specific jurisdiction jurisprudence requires. In any event, we shall assume that Maryland's long-arm statute reaches the limits of due process.

5

III

A state's sovereign authority over persons, property, and activities extends only to its territorial limits, and its laws have no operation in other states except as allowed by those states or by comity. See Pennoyer v. Neff, 95 U.S. 714, 720-22 (1877); Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 941 (4th Cir. 1994), cert. denied, 115 S.Ct. 1103 (1995). And a state's assertion of power beyond its borders violates the Due Process Clause of the Fourteenth Amendment. Pennoyer, 95 U.S. at 733.

Because the requirement that a person be physically present in a state before he may be subjected to that state's exercise of judicial power was too restrictive to serve the increasing demands of interstate commerce and the multi-state activities of corporations, the Supreme Court has established that a person is thought to be "present" in a state, not only when he is physically there, but also when he conducts meaningful activity there. In International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court explained that a person's activity in a state, conducted directly or through agents, may serve as an analog for his physical presence there, as long as the in-state activity creates "certain minimum contacts [with the forum state] such that maintenance of the suit [there] does not offend `traditional notions of fair play and substantial justice.'" Id. at 316 (citation omitted). That analog for physical presence was further defined in Hanson v. Denckla, 357 U.S. 235, 253 (1958), as activity by which "the defendant purposefully avails itself of the privilege of conducting activities within the forum State." To create a basis for the exercise of in personam jurisdiction, however, the defendant's activities must in any event create a "substantial connection" between himself and the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)).

The jurisprudence of surrogate presence in a state, articulated for pragmatic reasons, was never intended to reorder the concepts of state sovereignty which form the basis of the Constitution's due process guarantee. A state's sovereignty remains territorial, and its judicial power extends over only those persons, property, and activities within its borders. The linchpin for long-arm jurisdiction, therefore, is the

6

quantity and quality of the defendant's activity <u>in the forum state</u>. As we explained in <u>Lesnick</u>:

> While the jurisprudence of personal jurisdiction has focused on fixing the minimum measurement of a person's contact with a state necessary to substitute for the person's presence in the state and thus to justify that state's imposing an <u>in personam</u> judgment over the person, the immediate concept of "presence" is no longer part of the language. Nevertheless, the establishment of a surrogate for presence has been the core task in defining the due process boundaries of a state's legitimate exercise of sovereignty over a person beyond its borders.

35 F.3d at 941.

In this case, O'Connell, using only its computer terminal in New York, obtained information about Stover from Equifax. The record does not disclose where Equifax stored that information or where Equifax is located. O'Connell also made a telephone call to a private investigation firm in Maryland to retain it to conduct a "criminal check." When the Maryland firm completed its search of the public court records, it supplied the information to O'Connell in New York. O'Connell passed the information that it obtained from both Equifax and the Maryland investigation firm to its client in California. Finally, O'Connell acknowledges that "on occasion over the last several years" it has engaged Maryland investigation agencies to review public documents concerning other individuals.

Ordering a product or service by telephone from a company in a different state does not subject the customer to that state's jurisdiction. <u>See Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 417-18 (1984); <u>Rosenberg Bros. & Co. v. Curtis Brown Co.</u>, 260 U.S. 516, 518 (1923). While it is true that the electronic connection transports the customer's order for the product or service into the forum state, thereby prompting a response, such conduct does not establish the customer's "presence" in that jurisdiction. On the contrary, the use of a telephone to facilitate transactions between remote locations serves as an <u>alternative</u> to presence. To conclude that such activity establishes presence in a state would upset generally held expecta-

7

tions, see Craig v. General Finance Corp., 504 F. Supp. 1033, 1038-39 (D. Md. 1981) (in personam jurisdiction does not exist over person who placed various telephone calls and mailed letters to forum state), and redefine the nature of state sovereignty.

Stover's reliance on Calder v. Jones does not persuade us to reach a different conclusion because in that case the magnitude of the defendants' activities amounted to an analog for the defendants' presence in the forum state. In Calder, Shirley Jones filed a libel suit in California against the National Enquirer, one of its reporters, and one of its editors. The reporter and the editor challenged the California court's personal jurisdiction over them because they were Florida residents and had prepared the article primarily in Florida. The Supreme Court rejected the challenge, noting that the article about Jones was researched from California sources, the National Enquirer has its largest circulation in California, and both the reporter and the editor knew that the article would appear in 600,000 copies circulated in California. The Court concluded that California was both the focal point of the Jones story and of the alleged defamation. The defendants' "intentional, and allegedly tortious, actions were expressly aimed at California," and Jones suffered the "brunt of the harm" there. The defendants therefore must have "`reasonably anticipate[d] being haled into court there.'" Id. at 789-90 (citations omitted).

In this case, we cannot conclude that from O'Connell's occasional telephonic requests for information from Maryland-based investigation services over a period of years and its furnishing of that information to clients in other states, it could reasonably have anticipated being "haled into court" in Maryland. The magnitude of the Calder defendants' activities in California distinguishes that case from the one before us.

Because O'Connell's only contacts with Maryland were its occasional placement of telephonic orders for, and the consequent receipt of, investigation services from Maryland, we hold that it would contravene the Due Process Clause to apply Maryland's long-arm statute to grant Maryland courts in personam jurisdiction over O'Connell in

8

New York. Accordingly the district court's order dismissing this case for lack of personal jurisdiction over O'Connell is

AFFIRMED.

9