**RITZ CAMERA CENTERS, INC., Plaintiff,**

v.

**WENTLING CAMERA SHOPS, INC., et al., Defendants.**

**Civil No. AMD 97–1156.**

United States District Court, D. Maryland.

Oct. 31, 1997.

D. Christopher Ohly, Patton Boggs, L.L.P., Baltimore, MD, Garret Rasmussen, Patton Boggs, L.L.P., Washington, DC, for Plaintiff.

Stanley J. Reed, Bethesda, MD, for Defendant Wentlings.

Richard A. Medway, Powell, Goldstein, Frazer & Murphy, Washington, DC, Jeffrey W. Kelley, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for Defendant Wolf Camera, Inc.

## AMENDED MEMORANDUM

DAVIS, District Judge.

Subject matter jurisdiction in this case is based on diversity of citizenship. The plaintiff, Ritz Camera Centers, Inc., filed suit against Wentling Camera Shops, Inc., its president, Thomas Wentling, and Wolf Camera, Inc., alleging a breach of contract claim against the Wentling defendants, and a tortious interference with contract claim against Wolf. Defendants filed a joint motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. When plaintiff failed to file a timely response, I granted the motion and dismissed this case without prejudice in an order filed on July 22, 1997. Plaintiff has moved to vacate that order, and filed an opposition to the motion to dismiss, to which the defendants have separately replied. Plaintiff has also filed a motion to allow jurisdictional discovery, which defendants oppose. For the reasons that follow, because personal jurisdiction over the defendants is so plainly absent, and because no factual dispute has been generated by plaintiff as to the essential jurisdictional issues, I shall deny the motion to vacate the earlier order dismissing this case without prejudice.

(i)

Each of the parties has provided affidavits in support of their positions, and those affidavits adequately establish the facts essential to determination of the motion to dismiss. Ritz, a Delaware corporation with its principal place of business in Maryland, operates a chain of 565 retail camera shops in 38 states. Ritz has been aggressively seeking to expand its presence in the market through acquisitions in the last few years. Before Wolf purchased Wentling Camera in January 1996, Wentling Camera independently operated a chain of less than two dozen such shops in California. Wolf, said to be Ritz's only national competitor, operates a chain of such shops in the southeastern states. Apart from the Wentlings' negotiations with Ritz (summarized below), neither Wentling defendant has any contact whatsoever with the State of Maryland or with any individual or corporate resident of Maryland. Similarly, except that the founder of Wolf worked for Ritz more than 20 years ago in Maryland, Wolf has no contact whatsoever with the State of Maryland or with any individual or corporate resident of Maryland.

In July 1996, while he was in Charleston, South Carolina, Thomas Wentling was approached by an agent of Ritz regarding a possible acquisition by Ritz of Wentling Camera. The next month, Ritz and Thomas Wentling began a series of long-distance negotiations looking to the formation of a binding agreement. Throughout the negotiations, which at one point in early fall essentially terminated and then resumed, the parties exchanged many telephone calls, facsimile memoranda and mail correspondence, and there was one meeting in California. The gravamen of Ritz's claim focuses on an alleged telephone call between Ritz and Wentling and a related November 6, 1996, fax (transmitted from California to Utah), in which Thomas Wentling used the phrase "THE FINAL TERMS OF OUR AGREEMENT ARE. . . ." While the question whether a binding agreement ever came into existence is very much in dispute (and, of course, is immaterial to the jurisdictional issues), it is clear that serious, substantive negotiations continued after November 6, 1996, and that, by the end of November 1996, the two parties had not entered into a final written agreement. Thomas Wentling terminated negotiations in late November, and disclosed to his Ritz counterparts that other potential suitors had recently appeared on the scene. Within two months thereafter, Thomas Wentling had in fact sold his business to Wolf.

Pointing to an alleged history of attempts by Wolf to thwart and impede efforts by Ritz to gain national market share in the retail photographic services industry, Ritz essentially concedes in its complaint that it has no direct evidence of Wolf's malicious interference with its efforts to acquire Wentling Camera, but rather that the claim is brought because "[b]ased on the events of November and December, 1996, Ritz believes, and therefore alleges, that Wolf had knowledge of the pre-existing and valid Ritz–Wentlings

agreement." Complaint ¶ 26. In any event, Wolf provides affidavit evidence from its chief financial officer that its own discussions with Thomas Wentling regarding the possible acquisition of Wentling Camera began in June 1996.

Ritz's two count complaint alleges in count one that the Wentling defendants breached the November contract with Ritz, and in count two that Wolf tortiously interfered with the agreement between Ritz and Wentling Camera.

(ii)

■ Once a defendant raises a Rule 12(b)(2) defense, the plaintiff bears the burden of proving that the court can exercise personal jurisdiction over the defendant, *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 237 (D.Md.1992), *aff'd*, 991 F.2d 1195 (4th Cir.1993), by a preponderance of the evidence. *Cape v. Maur*, 932 F.Supp. 124, 125 (D.Md.1996). Plaintiff must show both that Maryland's Long–Arm statute confers jurisdiction, and that the exercise of jurisdiction does not offend due process considerations, *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985), although, in recent years, Maryland's appellate courts and the United States Court of Appeals for the Fourth Circuit have shown a willingness to collapse those two inquiries into a single analysis, since the Maryland Long–Arm statute is to be interpreted as extending to constitutional limits. *See Camelback Ski Corp. v. Behning*, 307 Md. 270, 274, 513 A.2d 874 (1986), *vacated and remanded*, 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *opinion on remand*, 312 Md. 330, 539 A.2d 1107, *cert. denied*, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 & n. *(4th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 437, 136 L.Ed.2d 334 (1996)(assuming language of Maryland Long–Arm statute § b(4) supports conclusion that statute extends to the limits of due process) [1]; *cf ESAB Group*,

---

**1.** The provisions of Maryland's Long–Arm statute relevant here are as follows:

(b) In general.—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent

*Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997)(construing like provision of South Carolina Long–Arm statute, which is worded identically as is Maryland's). In assessing the sufficiency of a defendant's contacts with the forum state, the "constitutional touchstone" is whether the contacts were "purposefully established" by the defendant such that he "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted).

■ The Supreme Court has drawn a distinction between "specific" jurisdiction and "general" jurisdiction. A court has specific jurisdiction over a defendant when a cause of action arises out of the defendant's minimum contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *ESAB Group, Inc.*, 126 F.3d at 625. "Specific personal jurisdiction requires a tri-partite showing that: (1) the nonforum defendant purposely directed its activities toward residents of the forum state or purposely availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, i.e. is consistent with 'fair play and substantial justice.'" *Cape*, 932 F.Supp. at 126(quoting *Burger King Corp.*, 471 U.S. at 477–78, 105 S.Ct. at 2185). I find that, at bottom, Chief Judge Motz's recent observation about the state of the law of personal jurisdiction over out-of-state defendants provides a ready guide to application of the above principles in this case:

I will not bother to recite the hornbook principles established by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957),

*Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) and *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Suffice it to say that in recent years the Fourth Circuit has taken a somewhat restrictive view of the constitutional reach of long-arm statutes, emphasizing that the inquiry is not one of mere reasonableness. Rather, the Fourth Circuit has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there. *See, e.g., Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132 (4th Cir.), *cert. denied,* —— U.S. ——,117 S.Ct. 437, 136 L.Ed.2d 334 (1996); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir.1994); *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474 (4th Cir.1993)....

[T]he doctrinal approach taken by the court at least draws into serious question whether it would sustain the assertion of jurisdiction over a defendant who ... has never traveled into the forum state, did not solicit the business giving rise to plaintiff's claims, and has had no contact with the forum state ...

*The Harry and Jeanette Weinberg Found., Inc. v. ANB Inv. Mgt. and Trust Co.*, 966 F.Supp. 389, 391–92 (D.Md.1997); *cf ESAB Group, Inc.*, 126 F.3d at 623 ("The question, then, is whether a defendant's contacts with the forum state are so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state.").

(iii)

■ It is undisputed here that the defendants have no contacts whatsoever with Maryland, apart from the alleged "contacts" relied on by plaintiffs both to establish per-

---

course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

Md.Code Ann., Cts. & Jud. Proc. § 6–103.

sonal jurisdiction and also to establish liability on the merits of their claims. As to the Wentling defendants, those "contacts" consist entirely of telephonic (voice and facsimile) exchanges and mail correspondence from without the state. Manifestly, such "contacts" do not provide a basis for the exercise of personal jurisdiction. *See Stover*, 84 F.3d at 137 ("the use of a telephone ... serves as an *alternative* to presence"); *Cape*, 932 F.Supp. at 128 ("Generally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process.") *Leather Masters (PVT) Ltd. v. Giampier Ltd.*, 836 F.Supp. 328, 331 (D.Md. 1993) ("without more, communications made from outside the State to a Maryland resident are not enough to justify the exercise of personal jurisdiction over an out-of-state defendant"); *Coating Engineers, Ltd. v. Electric Motor Repair, Co.*, 826 F.Supp. 147, 149 (D.Md.1993) (defendant's telephone conversations with party in Maryland did not constitute purposeful activity within Maryland to confer jurisdiction under the Maryland long arm statute).

Ritz attempts to avoid this well-settled rule through a strained argument based on the "intensity" of the negotiations between the parties, and by cobbling together snippets of language from prior cases which, on their facts, could not be more dissimilar from the facts here. To take but one example, Ritz relies on language from *Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F.Supp. 364, 369 (D.Md.1993)("As long as the nonresident's 'actions culminate in "purposeful activity" in the State,' jurisdiction is proper under (b)(1).") (citation omitted). This conclusory statement of a general principle is obviously true, as far as it goes. But, as in every case, that statement of general principle must be viewed in the light of the facts presented, which involved a claim arising out of defective roof shingles shipped by the defendant into Maryland. Judge Kaufman summarized the controlling facts as follows:

> In the instant case, defendant advertised in a nationally distributed magazine, mailed brochures and samples to Maryland, entered into a contract with a Maryland resident, arranged for delivery to Maryland, and apparently accepted payment from a Maryland corporation. Thus, ... the defendant's "relations with the forum state were not unique or insignificant and [plaintiff] is not attempting to manufacture jurisdiction based upon its unilateral activity...."

*Id.* at 371(citations omitted). There is not the remotest similarity between the facts in *Potomac Design* and the facts presented here, in which Ritz's unilateral act in initiating negotiations with Wentling Camera gave rise to the entire course of negotiations between them.

■ Similarly, Ritz fails to demonstrate that Wolf is subject to jurisdiction in Maryland. Ritz ignores the requirement of Maryland law that if jurisdiction is predicated on § (b)(4) over one who "causes tortious injury in the State ... by an act or omission outside the State" it must also be shown that such a defendant "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Rather, Ritz argues that *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)(article allegedly defaming state resident, which was researched through sources in the forum and was published in a national publication with large circulation in forum, supports exercise of personal jurisdiction over writers and editors of article), and *Stover* have effectively read out of the Maryland statute any requirement that there be a "persistent course of conduct" by such a defendant. I reject this interpretation. Indeed, the *Stover* court goes to great lengths to distinguish *Calder* on its facts. *See Stover*, 84 F.3d at 137 ("[I]n [*Calder*], the magnitude of the defendants' activities amounted to an analog for defendants' presence in the forum state."). Moreover, even in rejecting an exercise of personal jurisdiction in *Stover*, the Court does not hold that the requirement of a "persistent course of conduct" is no longer applicable, but instead reasoned that the insignificant contacts of the defendant with Maryland did not tip the constitutional balance in favor of an exercise of jurisdiction.

Id. Here, of course, there is nothing other than an (alleged) interference with contract, where one of the contracting parties happens to be a Maryland resident. *See also ESAB Group, Inc.,* 126 F.3d at 623.

What is truly dispositive here is that any reasonable concept of "fair play" would be grossly offended if this court were to exercise jurisdiction over Wolf under the facts and circumstances of this case. Patently, even assuming Wolf purposefully interfered with Ritz's contract to purchase Wentling Camera, Wolf's connection with Maryland is nevertheless "fortuitous" and "attenuated." A simple example illustrates the point. If Wolf knowingly converted Ritz's property which happened to be located without the state of Maryland at the time of the conversion, no one would earnestly suggest that a Maryland court might constitutionally exercise personal jurisdiction over Wolf as to such a claim. Likewise here, Ritz's presence in Maryland does not provide sufficient constitutional support for the exercise of personal jurisdiction over Wolf for the "theft" of a corporate opportunity having no connection to Maryland other than the fact that it is the location of plaintiff's residence. *Id.* at 626 ("Such a theory would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff always feels the impact of the harm there. *Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.*")(emphasis added).

(iv)

For the reasons discussed above, I conclude that personal jurisdiction over defendants is absent. Accordingly, the prior dismissal of this action without prejudice was justified, and I shall deny the motion to vacate.