**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GULFSTREAM, INCORPORATED,
Plaintiff-Appellant,

v.

PALM YACHT SALES, INCORPORATED;
VISTA YACHT COMPANY, INCORPORATED;
VISTA YACHTS, INCORPORATED; CHARLES

No. 94-2155

AMANTE; VALERIE AMANTE,
Defendants-Appellees,

and

EAST END ENTERPRISES, INCORPORATED;
HORIZON YACHT COMPANY, LIMITED,
Defendants.

GULFSTREAM, INCORPORATED,
Plaintiff-Appellant,

v.

PALM YACHT SALES, INCORPORATED;
VISTA YACHT COMPANY, INCORPORATED;
VISTA YACHTS, INCORPORATED; CHARLES

No. 94-2381

AMANTE; VALERIE AMANTE,
Defendants-Appellees,

and

EAST END ENTERPRISES, INCORPORATED;
HORIZON YACHT COMPANY, LIMITED,
Defendants.

GULFSTREAM, INCORPORATED,
Plaintiff-Appellant,

v.

PALM YACHT SALES, INCORPORATED;
VISTA YACHT COMPANY, INCORPORATED;
CHARLES AMANTE; VALERIE AMANTE,

No. 95-1144

Defendants-Appellees,

and

VISTA YACHTS, INCORPORATED; EAST
END ENTERPRISES, INCORPORATED;
HORIZON YACHT COMPANY, LIMITED,
Defendants.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Terrence W. Boyle, Chief District Judge.
(CA-92-51-4-BO)

Argued: December 6, 1995

Decided: April 12, 1999

Before WIDENER and NIEMEYER, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished opinion. Judge Widener wrote the opinion,
in which Judge Niemeyer and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Stephen M. Valentine, WHEATLY, WHEATLY,
NOBLES & WEEKS, P.A., Beaufort, South Carolina, for Appellant.

2

George Rountree, III, ROUNTREE & SEAGLE, L.L.P., Wilmington, North Carolina, for Appellees. **ON BRIEF:** George K. Freeman, Jr., ROUNTREE & SEAGLE, L.L.P., Wilmington, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WIDENER, Circuit Judge:

Following a final order in this case, the plaintiff, Gulfstream, Inc., a North Carolina corporation, appeals the orders of the district court that denied its motion to compel discovery, granted summary judgment in favor of the defendant Charles Amante on the issue of piercing the corporate veil, dismissed the defendant Valerie Amante for lack of personal jurisdiction, and denied its motion to amend its complaint to add Altech Yachts, Inc. as a party defendant. We affirm.

I.

Charles and Valerie Amante are residents of Florida and the sole shareholders, officers and directors of the defendant corporations Palm Yacht Sales, Inc., Vista Yacht Company, Inc., and East End Enterprises, Inc. Amante had been in the boat business since childhood. He built his first boat while in the seventh grade. Starting in 1980, the Amantes formed East End Enterprises as a charter management company for a trawler which they owned. In 1983, East End contracted with a boatyard in Taiwan to construct fiberglass vessels for importation and sale in the United States. In that same year, the Amantes formed another corporation, Eastern Yachts, Inc., with Arthur and Ellen Dulik, to import and sell the vessels imported from Taiwan.

The business was conducted so that East End imported the boats from the boatyard which manufactured them in Taiwan and then

3

transferred the boats to Eastern Yachts for marketing and sale. These boats were called Vista Yachts, and in 1984 the Amantes formed a third corporation, Vista Yacht Company, Inc., which they designated as the manufacturer of the boats. After Vista Yacht Company was formed, the boats were imported by East End, transferred to Vista Yacht Company, then transferred to Eastern Yachts or other dealers, who would hold the boats for retail sale.

Around 1986, East End began importing Vista Yachts from a second boatyard in Taiwan, Horizon Yacht Company, Ltd. Horizon has no connection with the defendants other than manufacturing boats for delivery to them. In 1987, importation of the boats was taken over entirely by Vista Yacht Company. Also in 1987, the Amantes formed Palm Yacht Sales, Inc., a retail outlet for the boats, incorporated in Florida and located in Fort Lauderdale. In July, 1989 the Amantes formed Altech Yachts, Inc., a corporation also located in Fort Lauderdale which imports power boats from Argentina for sale in the United States and serves as a brokerage for new and used boats of all makes.

On April 12, 1988 the plaintiff contracted with Palm Yacht Sales, Inc. for the purchase of a Vista 50 foot sport fisherman vessel to be constructed in Taiwan by the defendant Horizon Yacht Company according to certain specifications and using fiberglass molds owned by Vista Yacht Company. Upon completion, the vessel Crystal Sea was imported into the United States by Vista Yacht Company and transferred to Palm Yacht Sales, which delivered the boat to the plaintiff in Florida in November, 1988. Subsequently, the plaintiff discovered and gave notice to Amante around January, 1989 of various defects in the vessel. Notice of a defect in the hull was given to Amante around August, 1989. Following unsuccessful efforts to correct the defects, Gulfstream brought suit on April 15, 1992 under diversity jurisdiction in the District Court for the Eastern District of North Carolina against the corporate defendants and against Charles and Valerie Amante personally, alleging breach of express and implied warranties, revocation of acceptance, and negligence. The complaint also alleged that those defendant corporations which were owned by the Amantes were sham corporations and the alter egos of Charles and Valerie Amante.

On November 4, 1992, the district court granted Valerie Amante's motion to dismiss for lack of personal jurisdiction. On August 1,

4

1994, the court granted the plaintiff's motion for summary judgment against Horizon Yacht Company in the amount of $682,190.92 and granted summary judgment in favor of Charles Amante on the issue of piercing the corporate veil. Following a bench trial on the merits, on September 13, 1994 the court entered its judgment against Vista Yacht Company and Palm Yacht Sales for breach of warranty of merchantability in the amount of $316,000.00 plus prejudgment interest from November 14, 1988. Vista Yacht Company is inactive and its total assets are approximately $3,000.00 worth of office equipment and furniture. Amante testified on July 28, 1993 that Palm Yacht Sales was no longer active, that it had not conducted business with third parties "for a couple of years," and that the corporation had no assets.

II.

We first address Gulfstream's claim that the court erred in denying its motion to compel discovery, which order we review for abuse of discretion. Lone Star Steakhouse & Saloon v. Alpha of Virginia, 43 F.3d 922, 929 (4th Cir. 1995).

Gulfstream filed its complaint on April 15, 1992. Following the disposition of personal jurisdiction issues, the defendants, Palm Yacht Sales, Vista Yacht Company, East End Enterprises, Horizon Yacht Company, Ltd., and Charles Amante, filed an answer to the complaint on November 16, 1992. The parties filed a stipulation on discovery on February 22, 1993, and the first scheduling order was filed on February 25, 1993. The scheduling order stated that all defendants could serve a maximum of 50 interrogatories including subparts and that the defendants could serve 10 requests for production of documents. The plaintiff had the same conditions. Each party could take a maximum of 10 depositions. Discovery was to be concluded by August 12, 1993, and all motions were to be filed by September 13, 1993. The order cautioned counsel not to be dilatory in pursuing discovery, as motions for extensions were not favored.

On June 9, 1993, Gary Clemons, Esq. was granted permission to withdraw as attorney for the defendants, being replaced by George Rountree, III, Esq., defendants' present attorney, on June 23, 1993.

5

The record shows that the plaintiff served its first set of 51 interrogatories and six requests for production of documents on the defendants on June 9, 1993, over three months after the entry of the scheduling order. The defendants answered these on July 12, 1993. The plaintiff did not file a motion to compel responses it now claims were not made or were unresponsive, but rather served a second set of 14 additional interrogatories and six more requests for production of documents on July 19, 1993. The defendants never responded to these, taking the position that they were deprived of the allowed time period in which to respond. Again the plaintiff did not file a motion to compel.

Over five months later, on January 10, 1994, the plaintiff filed a motion to reopen discovery based on what it viewed to be a short discovery period and the need to conduct further discovery following the court's decision that New York and Florida law governed the issue of piercing the corporate veil, as opposed to the law of North Carolina. On February 7, 1994, the court granted the motion and allowed discovery to be reopened for an additional period of about two months, until April 6, 1994, and rescheduled the trial date for June 13, 1994.

Some three weeks later, on February 28, 1994, the plaintiff served an additional 33 interrogatories and 26 requests for production of documents, and asked by letter if counsel for the defendants would let him know if he intended to object to the additional requests. Counsel for defendants responded in a letter dated March 14, 1994 that the defendants did not intend to respond to the discovery requests and that formal objections would follow. On March 31, 1994 the plaintiff filed its first motion to compel discovery, six days before the expiration of the extended discovery period. It asked that its second and third requests for discovery be granted. On April 12, 1994, Amante answered the request for admissions but objected to the interrogatories and requests for production of documents on the grounds that most of the information had already been provided during Amante's previous deposition by answers already made to previous interrogatory questions or in documents already made available to plaintiff; that many of the interrogatories sought information about a corporation or a person not a party to the litigation (Altech); that Amante had offered to be available for a second deposition and the plaintiff had not availed itself of such offer; and that a response to the third set of

6

interrogatories and request for production of documents would be unduly burdensome, expensive, and oppressive to Amante. In response, the plaintiff filed a second amended motion to compel discovery on April 29, 1994. Following a hearing on the motions, the court denied both pending motions to compel, finding that the defendants had reasonably complied with discovery requests and that each side had ample time to conduct discovery. The court noted that the case had been pending for approximately two years, that the court had allowed discovery to be reopened once following expiration of the initial discovery period, and that the second discovery period had also expired.

The record shows that the plaintiff had ten months to draft interrogatories and requests for documents before the first discovery order was entered February 25, 1993. The order then allowed over five months for on-going discovery. The plaintiff waited until July 28, 1993 to take its first and only deposition. The plaintiff filed no motions to compel prior to the cutoff date for discovery or prior to the deadline for motions on August 15, 1993. It was not until almost six months later, on January 10, 1994, that the plaintiff filed a motion to reopen discovery. When the court granted the motion to reopen discovery for an additional two months, the plaintiff again waited three weeks to serve interrogatories and requests that were sure to draw objection as they exceeded the number of allowed interrogatories and requests for production. Although the plaintiff informed Amante's counsel by letter that it intended to serve interrogatories and requests for documents in excess of the number originally agreed upon and ordered, it does not appear in the record that it secured a new stipulation or asked the court for a new order increasing the number of interrogatories or requests. It was not until the defendants objected to a third set of interrogatories and requests that the plaintiff filed a motion, on March 31, 1994, to compel discovery.

We also note as quite relevant in this appeal that the response of Amante to the discovery request of the plaintiff was served on the plaintiff's attorney July 12, 1993, and the discovery deposition of Amante was taken on July 28, 1993. At that time, no question was asked Amante about the records of Palm Yacht Sales which had been found to be missing, as was known to plaintiff even at that time. Neither was Amante asked about any transfers, claimed to be without

7

consideration, of any property of the corporations involved in this case, nor about claimed excessive salaries, nor the claimed deliberate keeping of those corporations devoid of enough assets to conduct their ordinary business. It is also especially worthy of note that despite the opportunity to recall Amante to give another deposition for more than two months in 1994, that was not done. Even more worthy of note, especially in the setting of this case, is the fact that the affidavit of one Steven Fialkow, a certified public accountant, was filed in the case August 16, 1993. Fialkow was the accountant for Vista Yacht Company, Inc., East End Enterprises, Inc., Mr. and Mrs. Amante, and Palm Yacht Sales, Inc. for all of the period of time involved in this case. For the corporations he provided the payroll-related tax documents, computerization of operations, preparation of compiled financial statements, and preparation of corporate tax returns. For the Amantes personally he prepared their personal income tax returns, and he provided advice and guidance in other tax-related technical matters. He was in contact with the officers and directors of each corporation on a monthly basis or more frequently as required. He knew that the meetings of the directors and stockholders of the corporations were regularly held and was present at most, but not all, of such meetings. In his judgment, the financial and business records of each corporation reflected that the business of each was conducted by its directors and officers in the name of such corporation and for its own account. He had never observed any co-mingling of funds or assets of the corporations with any other, or with the personal funds and assets of the Amantes. And while it may be expected that the affidavit of the certified public accountant who oversaw the corporations' tax-related, and most of their business, affairs might be favorable to the corporations and their owners, we cannot overlook the fact that Fialkow was not called by the plaintiff to give any discovery deposition in this case. Doubtless, he had within his personal knowledge most, even if not all, of the answers to all of the questions the plaintiff now argues should have been answered relating to whether or not the corporate veil should have been pierced. And the failure of the plaintiff to ask the questions of the two people who could have answered them, Fialkow and Amante, cannot be held against the defendants, indeed quite the opposite is the case.

In sum, we are of opinion that the plaintiff had adequate opportunity to perform all the discovery it needed in this case. The record

8

shows that dozens or hundreds of pages of data with respect to the organization, and business affairs, and tax returns of the defendants were in the hands of the plaintiff for weeks or months. For the occasional interrogatory which may have been improperly objected to, or not quite directly responded to, the opportunity of the plaintiff to correct and supply these omissions by way of depositions of Amante or Fialkow cannot be taken otherwise than to mean that the factual record, as now before us, is not subject to substantial contradiction. Thus, we hold that the district court did not abuse its discretion in its rulings on discovery. This case is not unlike Lone Star Steak House & Saloon v. Alpha of Va., 43 F.3d at 928-29, and we follow that case.

III.

The district court entered summary judgment for Amante on the issue of piercing the corporate veil.

Vista Yacht Company is a New York corporation, and the district court correctly applied the law of New York in ascertaining whether or not the corporate veil had been pierced. By the same token, Palm Yacht Sales is a Florida corporation, and the court applied the law of Florida. The parties are agreed that there was no error in this approach.

In considering Vista Yacht Company, there was no failure to hold corporate meetings to elect directors or otherwise to comply with corporate formalities. Indeed, the record is to the contrary. The district court considered that there was evidence that Vista may have been under-capitalized, but there was no showing in the record that any domination of Amante over the corporation Vista Yacht Company was used to commit a fraud or like wrong against the plaintiff. The district court found that any under-capitalization of Vista did not result in the plaintiff's loss, relying on Musman v. Modern Deb Inc., 50 A.D.2d 761, 762 (NY 1975). The facts stated by the district court are correct, and we note that at the time the motion for summary judgment was filed by Amante, August 16, 1993, the depositions of Amante and Carver, the principal officer of Gulfstream, were filed, as was the affidavit of Fialkow. The defendants had responded to all discovery requests of the plaintiff, or had objected thereto, and there were no outstanding objections before the court by Gulfstream with

9

respect to the manner or form of the defendants' responses to inter-rogatories. Neither had there been made by Gulfstream any motion to compel on account of any response or lack of response of the defendants to discovery requests of Gulfstream. The district court pointed out, in its opinion granting summary judgment, that the harm to Gulfstream arose from the defective manufacture of the yacht, something which was done by the manufacturer of the yacht in Taiwan. Claims against Vista, it correctly recited, had to do with breaches of warranty and did not arise from any under-capitalization of the corporation. Thus, it correctly decided that the corporate veil against Vista should not be pierced.

With respect to Palm Yacht Sales, the court found that under Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984), Florida law is clear that wrongdoing must be shown before a corporate veil may be pierced. Florida law considers wrongdoing to be using the corporation as a device or sham to accomplish some ulterior purpose such as fraud or some illegal purpose. The district court found that there was no showing that Amante engaged in any fraudulent, dishonest, or criminal behavior with respect to the operation of Palm Yacht Sales or that he knew of the defects in the yacht and fraudulently concealed them. Thus, it correctly held that the corporate veil should not be pierced with respect to Palm Yacht Sales.

We should remark that Vista Yacht Company and Palm Yacht Sales, so far as this record shows, were legitimate corporations engaged in the legitimate boat business. The district court's summary judgment in favor of Amante with respect to those corporations is affirmed.[1]

_____

[1] About the only fact which has been brought to our attention which is not explained in the record is the introduction into the record, on August 12, 1994, of an exhibit to a motion to reconsider the court's granting Amante's motion for summary judgment. This exhibit was explained only as newly discovered evidence and consists of two checks, one payable to Valerie Amante in the amount of $68,345.xx, and one payable to Charles Amante in the amount of $68,810.53, each dated November 26, 1990 with the blank labeled "For" filled in with "Pension." No other explanation for the purpose of the checks was offered, and the court overruled the motion. The trial commenced August 15, 1994, only three

10

IV.

On November 4, 1992, the district court filed its order dismissing Valerie Amante from the case on the ground that it found no basis upon which to assert personal jurisdiction over her. It found that "plaintiffs have not shown any involvement by Mrs. Amante in the sale, construction, or import of the Crystal Sea aside from her titular status as an officer in the corporate defendants controlled by the Amantes." The parties agree that this ruling was correct.

However, on August 16, 1993, Gulfstream filed its motion seeking reconsideration of that order. The basis argued to the district court for the reconsideration of the order was that Carver, the principal officer of Gulfstream, had testified in a deposition that Valerie Amante talked to him on the telephone about the Crystal Sea four, five or six times, he being in his office in Washington, North Carolina, and she being in the Vista office in New York. That deposition of Carver was taken July 27, 1993 and was presented to the court at the time the motion for reconsideration was filed, on August 16, 1993. The conversations referred to were with respect to the selection of fabrics and

_____

days later. On questioning at oral argument, Amante's attorney advised that these checks were refunds to the Amantes for their previous contributions into a pension plan which had become defunct on account of lack of sufficient members, required, apparently, by statute or regulation. We express no opinion on the purpose for which the checks were written, and the record does not disclose the purpose except that the order of the district court overruling the motion held that "[n]ew evidence was not available that would alter the court's previous grant of summary judgment." That order referred to a hearing which was apparently not reported, or, if reported, was not transcribed. Thus, we cannot say that the district court was in error for its stated reason. We do note, however, that the motion was quite late, long after discovery had closed and only three days before trial. Additionally, Amante was asked no question in his deposition with respect to any such transfer or like transfer, and he was not recalled for a further deposition, although opportunity was offered. Neither was Fialkow examined, and of all the people connected with the case, Fialkow would have had knowledge of this transaction. Thus, the mere filing of the two checks is no reason to further examine the district court's decision with respect to piercing the corporate veil.

11

mini blinds, and Valerie Amante mailed to him samples of interior finishes. On appeal, Gulfstream points out that the Samonds, a couple in North Carolina who purchased a boat from Palm Yacht Sales in Florida, had 12 similar conversations with Valerie Amante in 1988.

In a case on facts more persuasive in favor of service of process than the one at hand, the North Carolina Court of Appeals held in Stallings v. Hahn, 392 S.E.2d 632 (N.C. Ct. App. 1990), that an advertisement placed in a periodical by the defendant, a resident of Pennsylvania, which reached the plaintiff, a resident of North Carolina, two telephone calls between the plaintiff and the defendant, and a cashier's check sent by the plaintiff in North Carolina to the defendant in Pennsylvania were insufficient contacts to provide good service of process under the North Carolina statute and International Shoe Co. v. Washington, 326 U.S. 310 (1945). See N.C. Gen. Statutes, Art. 6A, § 1-75.4.

We have similar holdings in Stover v. O'Connell Ass'n, Inc., 84 F.3d 132 (4th Cir. 1996), and Wolf v. Richmond City Hosp. Auth., 745 F.2d 904 (4th Cir. 1984).

Accordingly, we are of opinion the decision of the district court was correct and it is affirmed.

Along that line, we should say that because what little Valerie Amante had to do with the purchase and sale of the Crystal Sea, it was not nearly so much as that of her husband, Charles Amante, in favor of whom summary judgment is affirmed. So even if the district court erred in not bringing Valerie Amante back into the case, that error is harmless.

V.

Finally, Gulfstream challenges the district court's order denying leave to add Altech Yacht Co., Inc. as a defendant. The motion to amend the complaint for that purpose was filed November 15, 1993, some two or three months[2] after the deadline for filing motions under

_____

[2] The deadline date, August 15 or September 13, appears both ways in the record. We do not think the difference is of consequence here.

12

the pre-trial order. The motion contends that Altech is a successor corporation to Vista Yacht Co., Inc., that it had assumed the functions of importing and distributing boats, formerly performed by Vista, and that assets of Vista had been transferred to Altech.

The district court found that Gulfstream's proffer was that Altech was formed on or about July 11, 1989, but that the sales agreement for the yacht involved in this case was signed April 12, 1988, more than a year prior to the time Altech was created, and that the yacht was delivered to the plaintiff on November 14, 1988, some eight months before Altech was formed. It found there was no showing that Altech had any involvement in the manufacture, distribution or sale of the yacht. Consequently, the inclusion of Altech would have been futile and would have added nothing to the merits of the case.

Additionally, the district court denied the motion to amend the complaint because it was untimely, being filed two or three months after the deadline for filing motions.

Consequently, we are of opinion the denial of leave to amend the complaint was not an abuse of discretion. Nat'l Bank of Washington v. Pearson, 863 F.2d 322, 327 (4th Cir. 1988).

The judgment of the district court is accordingly

AFFIRMED.

13